# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| PAUL LATHAN, JR.<br>    La. DOC #502198<br>VS. | CIVIL ACTION NO. 08-0731<br><br>SECTION P<br>JUDGE JAMES |
| WARDEN JOHNNY SUMLIN | MAGISTRATE JUDGE HAYES |

## REPORT AND RECOMMENDATION

On May 20, 2008, *pro se* petitioner Paul Lathan, Jr. filed the instant petition for writ of *habeas corpus* pursuant to the provisions of 28 U.S.C. §2254. Petitioner is an inmate in the custody of Louisiana's Department of Public Safety and Corrections. He is incarcerated at the Claiborne Parish Detention Center. Petitioner attacks his 2005 manslaughter conviction in Louisiana's Third Judicial District Court. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons it is recommended that the petition be **DISMISSED WITHOUT PREJUDICE** because petitioner failed to exhaust available state court remedies before filing suit.

### *Statement of the Case*

On August 25, 2003, petitioner was indicted and charged with one count of second degree murder. On October 28, 2005, he was found guilty of the lesser and included offense of manslaughter. On some unspecified date he was sentenced to serve 27 years at hard labor. See *State of Louisiana v. Paul G. Lathan, Jr.*, 41,855 (La. App. 2 Cir. 2/28/2007), 953 So.2d 890, 894.

Petitioner appealed his conviction and sentence to the Second Circuit Court of Appeals arguing the following assignments of error: (1) the trial court erred by denying petitioner's motion to quash based on La. C.Cr.P. art. 578; (2) the trial court erred when it granted the State's motion *in limine* excluding evidence that the victim was HIV positive, under the influence of cocaine, and had a reputation for burglarizing houses in the neighborhood, thus depriving petitioner of his right to present a defense; and, (3) the sentence was excessive. On February 28, 2007 the Second Circuit affirmed petitioner's conviction and sentence. See *State of Louisiana v. Paul G. Lathan, Jr.*, 41,855 (La. App. 2 Cir. 2/28/2007), 953 So.2d 890.[1]

Thereafter, the events become somewhat confused. According to his pleadings, petitioner, on some unspecified date "... notified the Louisiana Supreme Court of his <u>intentions to seek a writ of *certiorari*</u> to the 2nd Circuit Court of Appeal. However, he requested this court, the appellate court, and district court to provide him with a transcript or copy thereof of the trial and/or record designated for appeal so he could properly file his application, which was denied." In the Memorandum Order dated May 28, 2008, petitioner was directed to provide specific information to permit an analysis of this situation and, in response to that directive, petitioner supplied some, but not all of the information requested. In any event, the evidence he did submit establishes the following:

Petitioner corresponded with the Clerk of the Supreme Court on March 29, 2007; on April 23, 2007, the Clerk advised him "You should file your application as soon as you are able,

---

[1] On July 14, 2008, the undersigned ordered petitioner to provide a copy of the brief filed on his behalf on direct appeal. [see rec. doc. 4]

preferably within 60 days from the date of this letter." [rec. doc. 7, p. 4[2]]

On May 1, 2007, petitioner corresponded with the Clerk of the Second Circuit Court of Appeals and asked to inspect the court's records with regard to his appeal.[3] On May 3, 2007, the Clerk advised, "It will be necessary that you file a formal motion to view the records in the possession of this court to prepare documents with the Supreme Court ... Now that you have made a filing in the Supreme Court, this court may not have jurisdiction to entertain such a motion." [rec. doc. 7, p. 10]

On May 16, 2007,[4] petitioner filed a "Motion to Compel Production of Documents" in the Louisiana Supreme Court. In that pleading, petitioner asked the Supreme Court to compel the Second Circuit Court of Appeals to allow him access to court records pertaining to his appeal. According to the pleading, petitioner had not yet filed his application for *certiorari* in the Louisiana Supreme Court.[5] [rec. doc. 7, pp. 5-8]

On September 18, 2007, the Clerk of the Supreme Court advised petitioner that his Motion to Compel Production of Documents was denied. By that same letter, petitioner was advised that he had been granted "... an additional 60 days in which to supplement his original filing with substantive arguments..." [rec. doc. 7, pp. 9 and 11]

On November 8, 2007, the Clerk of the Supreme Court responded to a letter written by

---

[2] Petitioner did not provide a copy of the letter he submitted to the Supreme Court.

[3] Petitioner did not provide a copy of the letter he submitted to the Second Circuit Court of Appeals.

[4] The pleading in question is neither dated nor signed; however the date May 16, 2007 is written in the upper right hand corner of the first page of the pleading. [rec. doc. 7, p. 5]

[5] Petitioner alleged, "Defendant intends to file an application for a Writ of Certiorari ... in review of a ruling by the Court of Appeal Second Circuit affirming his conviction and sentence by the Third Judicial District Court." [rec. doc. 7, p. 5 at ¶ I]

petitioner on October 16, 2007.[6] The Clerk advised, "We are returning your motion for production of documents as this Court denied your first motion to compel production of documents on May 30, 2007. <u>You should simply file your claims</u>, preferably within 60 days." [rec. doc. 7, p. 12] It appears that petitioner did not heed that advice and thus failed to seek review of the substantive claims raised on direct appeal.[7]

On November 13, 2007, the Second Circuit Court of Appeals denied petitioner's motion for production of public records noting, "The applicant makes a public record request for a copy of the court's record, indicating that the record is necessary for him to seek supervisory review of this court's judgment in *State v. Lathan*, 41,855 (La. App. 2d Cir. 2/28/07), 953 So.2d 890. The applicant should seek the requested documents through the Louisiana Supreme Court, where his application for writ of supervisory review is currently pending." [*State v. Lathan*, 41, 855-KA at rec. doc. 7, p. 13]

On November 28, 2007, his Motion for Production of Documents filed in the Third Judicial District Court was denied. Among other things, the court observed that petitioner had not articulated a "particularized need" so as to entitle him to free copies of the court records. [rec. doc. 7, pp. 14-21]

On March 28, 2008, the Louisiana Supreme Court denied writs. *State of Louisiana v. Paul G. Lathan, Jr.*, 2007-0805 (La. 3/28/2008), 978 So.2d 297.[8] Petitioner apparently did not

---

[6] Again, petitioner did not provide a copy of this letter.

[7] Elsewhere petitioner alleged that he did not seek review in the Louisiana Supreme Court because he only notified the court of his intention to seek writs, but never did so because he was unable to obtain the trial or appeals records. [rec. doc. 1, ¶11, p. 3]

[8] Petitioner applied for reconsideration but the Supreme Court denied reconsideration on August 29, 2008. *State of Louisiana v. Paul G. Lathan, Jr.*, 2007-805 (La. 8/29/2008), — So.2d —.

seek further review in the United States Supreme Court. [rec. doc. 1, p. 11 at ¶14]

Petitioner did not seek post-conviction relief in the District Court. [see rec. doc. 1, ¶11(e) at p. 4 – "The petitioner avers that other than the direct appeal, he has not filed any collateral attacks on his conviction and/or sentence ..."]

Petitioner signed his federal *habeas corpus* petition on May 12, 2008 [rec. doc. 1, p. 12]; it was received and filed on May 20. Petitioner presents three claims for relief: (1) the trial court erred in granting the State's motion in *limine* excluding evidence of the victim being HIV positive, under the influence of cocaine and of having a reputation for burglarizing homes in petitioner's neighborhood, thus depriving petitioner of the right to present a defense; (2) petitioner was denied the right to effective assistance of counsel and due process when he was not afforded a transcript or an attorney to pursue his writ of *certiorari* to the Louisiana Supreme Court on direct review; and, (3) excessiveness of sentence.

On July 14, 2008, the undersigned completed an initial review of petitioner's pleadings and exhibits and directed him to provide additional information and argument.[9] On August 11,

---

[9] The undersigned made the following observations with regard to the issues of timeliness, exhaustion of state court remedies, and procedural default:

"If petitioner is correct in his assertion that he did not timely seek certiorari in the Louisiana Supreme Court following the February 28, 2007 judgment of the Second Circuit Court of Appeals, then it is possible that his federal petition, filed in May, 2008, was untimely under the AEDPA. Petitioner should provide argument and evidence to support his claim that his petition is timely. In the alternative, he should provide argument in support of the application of statutory tolling pursuant to 28 U.S.C. §2244 or equitable tolling.

Based on the information supplied, it is unclear whether petitioner has exhausted all available state court remedies by fairly presenting his federal claims to the Louisiana Supreme Court in a procedurally correct manner. The published jurisprudence suggests that the Supreme Court denied writs on March 28, 2008, however, petitioner, by his own admission, states that he did not file an application for *certiorari*. In order to determine whether petitioner exhausted state court remedies, more information is needed.

In the event that petitioner did not properly exhaust his federal *habeas* claims, those claims might now be considered technically exhausted but now procedurally defaulted since petitioner would probably not be able to raise them in a subsequent petition for post-conviction relief.

2008, petitioner requested and was granted an extension of time to comply with the order. [rec. docs. 5 and 6] On September 15, 2008, petitioner responded to the Memorandum Order by providing some but not all of the documents requested.[10] Further, petitioner provided no

---

Of course, if his federal claims are now procedurally defaulted, federal review of the merits of those claims could only occur if petitioner established cause and prejudice for the default or that a miscarriage of justice would occur if the court failed to review the merits of his claims. In order to determine whether petitioner's claims are now technically exhausted but procedurally defaulted, more information is needed. Further, in the event that the claims are now procedurally defaulted, petitioner should be afforded the opportunity to argue "cause and prejudice" for the default, or that a "miscarriage of justice" would result upon the court's failure to address the merits of his claims."[rec. doc. 4]

The undersigned also directed petitioner to provide:
"1. A copy of the petitioner's brief on appeal to the Second Circuit Court of Appeals in the matter under Docket Number 41,855-KA;

2. A copy of any correspondence between appellate counsel and petitioner following the February 28, 2007 judgment affirming petitioner's conviction;

3. In the event that petitioner maintains that the Second Circuit Court of Appeals provided Notice of Judgment on some date other than February 28, 2007, petitioner should provide evidence and argument in support of such claim;

4. **DATED** copies of **ALL PLEADINGS OR CORRESPONDENCE** submitted by the petitioner (or on his behalf) to the Louisiana Supreme Court following the Second Circuit's judgment affirming his conviction and sentence, and copies of all **ORDERS, JUDGMENTS, OR CORRESPONDENCE** from the Louisiana Supreme Court to the petitioner;

5. **DATED** copies of all pleadings filed in the District Court, the Court of Appeals, or the Supreme Court seeking copies of trial transcripts, and, copies of the judgments or orders of those courts denying petitioner's requests; further, petitioner should provide argument in support of his contention that it was necessary for him to review those transcripts prior to perfecting his application for certiorari;

6. Petitioner should state whether or not state court remedies remain available to him; if not, he should expand on his argument of "cause and prejudice" which he has previously submitted;

7. In the event that petitioner did not timely seek further direct review in the Louisiana Supreme Court, he should provide argument to establish that he is entitled to either statutory or equitable tolling of the AEDPA limitations period." [rec. doc. 4]

[10] Petitioner submitted the following documents: (1) letter from the Clerk of the Supreme Court dated April 23, 2007 [rec. doc. 7, p. 4]; unsigned "Motion to Compel" filed in the Supreme Court and dated May 2007 [id., pp. 5-8]; letter from the Clerk of the Second Circuit Court of Appeals dated May 3, 2007 [id., p. 10]; letter from the Clerk of the Supreme Court dated September 18, 2007 [id., p. 9]; another copy of the September 18 letter [id., p. 11]; letter from the Clerk of the Supreme Court dated November 8, 2007 [id., p. 12]; order from the Second Circuit Court of Appeals dated November 13, 2007 [id., p. 13]; ruling of the Third Judicial District Court dated November

6

additional argument on the issues of time-bar, exhaustion, or procedural default.

In his original memorandum, however, petitioner conceded that his current claims were not presented to the Louisiana Supreme Court, but that his failure to exhaust State court remedies should be excused because, despite repeated requests, he was denied copies of the trial court transcript which, he claims, was needed to perfect his petition for discretionary review in the Louisiana Supreme Court; and, because he was denied representation by counsel. [rec. doc. 1-3] In the memorandum order of July 14, 2008, the undersigned noted, "Petitioner has provided a rambling argument which appears to address the issue of 'cause' for the alleged default in the Supreme Court. <u>He should explain in detail the reasons he claims he needed copies of the trial transcripts to perfect his application for writs in the Louisiana Supreme Court</u>. Further, petitioner claims in the alternative that he was denied access to courts until April 3, 2004, the date that the Warden appointed inmate counsel to represent him. It appears that petitioner has provided an incorrect date in his pleadings. If the 'access to courts' issue was resolved in 2004, prior to the resolution of his appeal, then petitioner's claim is incomprehensible." [rec. doc. 4 at fn 10] Unfortunately, petitioner chose to ignore this suggestion and provided no explanation as requested.

*Law and Analysis*

*1. Exhaustion of State Court Remedies*

This case is subject to the provisions of The Antiterrorism and Effective Death Penalty Act (AEDPA). See *Lindh v. Murphy*, 521 U.S. 320, 324-26, 117 S.Ct. 2059, 2062-63, 138

---

28, 2007 [id., pp. 14-16]; duplicate copy of the previous documents [id., pp. 17-19]; and, another duplicate copy of the district court ruling [id., pp. 20-22].

L.Ed.2d 481 (1997)(confirming that the AEDPA applies to federal *habeas corpus* petitions filed on or after April 24, 1996, the effective date of the AEDPA). Among other things, AEDPA provides: "An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that ... the applicant has exhausted the remedies available in the courts of the State...." See 28 U.S.C. § 2254(b)(1)(A). Further, § 2254(c) provides that an applicant "shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."

Exhaustion of available state court remedies is a "fundamental prerequisite" to federal *habeas* relief; this prerequisite must be satisfied before a state prisoner may collaterally attack his state court conviction in a federal court pursuant to 28 U.S.C. §2254. *Sterling v. Scott*, 57 F.3d 451, 453 (5th Cir.1995), citing *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).

In order to satisfy the exhaustion requirement, a petitioner proceeding under §2254 must fairly present the substance of his claims for relief to the highest state court in a procedurally proper manner so that the state's courts are given a fair opportunity to consider his challenges before those issues come to federal court for *habeas corpus* review. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844, 119 S.Ct. 1728, 1732, 144 L.Ed.2d 1 (1999) This is so because state courts, "like federal courts, are obliged to enforce federal law." *Id.* at 844 (citing *Rose v. Lundy*, 455 U.S. 509, 515-516, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982) and *Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950).). Thus, "when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity

to review this claim and provide any necessary relief." *Id.* Exhaustion results from the petitioner's pursuit of his claims through state courts either by direct appeal or by post-conviction proceedings. See *Orman v. Cain*, 228 F.3d 616, 620 & n. 6 (5th Cir.2000). Further, exhaustion is not completed unless the prisoner has presented his claims to the State's highest court, even if review by that court is discretionary. *O'Sullivan v. Boerckel,* 526 U.S. 844 ("Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, we conclude that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.")

Louisiana's highest court is the Louisiana Supreme Court. LSA Const. Art. 5, §5(a) provides in pertinent part, "The supreme court has general supervisory jurisdiction over all other courts." Thus, a complete round of Louisiana's established appellate review process includes an application for writs in the Louisiana Supreme Court. See Supreme Court Rule X.

By his own admission petitioner did not seek further discretionary review in the Louisiana Supreme Court via writ of *certiorari*.[11] Thus, since petitioner did not afford the Louisiana courts "... one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process..." [see *O'Sullivan v. Boerckel*, 526 U.S. at 845], his federal claims remain unexhausted.

---

[11] As shown above, according to the original petition, petitioner filed a "Notice of Application for Writ of Certiorari" in the Louisiana Supreme Court. Further, by his own admission, petitioner, "... only notified the Louisiana Supreme Court of his intentions to file an Application for Writ of Certiorari; however, he was unable to ever do so properly..." [rec. doc. 1, ¶11(a), p. 3] Elsewhere, he alleged that he "attempted" to file a writ application, but was prevented from doing so. [Id, ¶11(e), p. 4] Further, petitioner was afforded the opportunity to clarify this issue, however, his Amended Petition provided no additional argument. Finally, the exhibits tendered by petitioner support his assertion that he did not file a formal application for *certiorari* in the Louisiana Supreme Court. [See rec. doc. 7, p. 4; pp. 5-8; p. 9, p. 11, p. 12]

Instead of providing evidence of exhaustion, petitioner has provided argument to establish that he should be exempted from the exhaustion requirement. According to petitioner, his admitted failure to exhaust should be excused because he was not provided trial court records and, he was not provided with the assistance of counsel to perfect his application for discretionary review. [rec. doc. 1-3]. Both claims are without support in the law.

## 2. Right to Counsel

First, contrary to petitioner's assertion, the Supreme Court recognizes no right to counsel for discretionary appeals on direct review. *Ross v. Moffitt*, 417 U.S. 600, 610-11, 94 S.Ct. 2437, 2443-44, 41 L.Ed.2d 341 (1974); *Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S.Ct. 1990, 1993, 95 L.Ed.2d 539 (1990) ("Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further. Thus, we have rejected suggestions that we establish a right to counsel on discretionary appeals."); see also *Wainwright v. Torna*, 455 U.S. 586, 102 S.Ct. 1300, 71 L.Ed.2d 475 (1982).

Thus, since petitioner was not entitled under the Constitution to be represented by counsel in the discretionary review proceedings, the failure to provide counsel does not serve to exempt him from the exhaustion doctrine.

## 3. Free Transcripts

Next, petitioner maintains that he should be exempted from the exhaustion requirement because notwithstanding requests in the District Court, the Court of Appeals, and the Supreme Court, he was not provided free copies of the trial record for use in pursuing discretionary review in the Louisiana Supreme Court.

Petitioner thus implies that the Constitution requires the State to provide an indigent

defendant with a complete trial transcript free of charge in order for the defendant to pursue discretionary relief in the Louisiana Supreme Court. He is mistaken. In *Griffin v. Illinois*, 351 U.S. 12, 19-20, 76 S.Ct. 585, 100 L.Ed. 891 (1956), the Supreme Court held that the Due Process and Equal Protection clauses of the Fourteenth Amendment require that states provide indigent defendants with a trial transcript free of charge when it is necessary for meaningful appellate review. However, the state is not "obligated to automatically supply a complete verbatim transcript," *Moore v. Wainwright*, 633 F.2d 406, 408 (5th Cir.1980), and a State need not waste its funds providing for free those parts of the transcript that are not "germane to consideration of the appeal." *Draper v. Washington*, 372 U.S. 487, 495, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963). "[N]or is the state required to furnish complete transcripts so that the defendants ... may conduct 'fishing expeditions' to seek out possible errors at trial." *Jackson v. Estelle*, 672 F.2d 505, 506 (5th Cir.1982).

Further, it appears as though the Louisiana courts would have authorized the production of free transcripts upon petitioner's demonstration of a particularized need for the records. [see rec. doc. 7, pp. 14-16] However, petitioner's allegation of a "particularized need" was deficient. In his Motion to Compel Production of Documents he alleged only, "Defendant avers that he has a particularized need for the verbatim transcripts as well as minutes from the 2nd Circuit Court of Appeal as are applicable in order to fully prepare a comprehensive application for Writ of Certiorari for presentation to this Honorable Court." [see rec. doc. 7, p. 5, at ¶IV] Such a conclusory statement was clearly insufficient to warrant relief.

Finally, as shown above, the undersigned instructed petitioner to "... explain in detail the reasons he claims he needed copies of the trial transcripts to perfect his application for writs in

11

the Louisiana Supreme Court." [rec. doc. 4 at fn 10] Petitioner provided no explanation. In any event, the Rules of the Louisiana Supreme Court clearly do not mandate that *pro se* applicants provide copies of the transcripts. [See La. Supreme Court Rule X] In addition, with regard to the writ application, petitioner could only argue those claims already raised on direct review.

In short, petitioner was required to exhaust all available state court remedies prior to proceeding herein. He has shown no reason to warrant an exemption from that requirement.

### *4. Are State Court Remedies Available?*

Petitioner did not fairly present his current *habeas corpus* claims to the Louisiana Supreme Court. However, based on the pleadings and exhibits currently before the court, it is impossible to determine whether Louisiana affords any other remedies for petitioner at this time. Petitioner probably would be prohibited from seeking discretionary review of the Second Circuit's judgment on appeal at this time because Supreme Court Rule X, §5(a) provides, "An application seeking to review a judgment of the court of appeal ... shall be made within thirty days of the mailing of the notice of the original judgment of the court of appeal..." The Second Circuit rendered judgment on direct appeal on February 28, 2007, and ostensibly mailed notice of judgment on that same date. See *State of Louisiana v. Paul G. Lathan, Jr.*, 41,855 (La. App. 2 Cir. 2/28/2007), 953 So.2d 890. It thus appears that petitioner's ability to seek further direct review is no longer available.

Nevertheless, it appears that petitioner might still be able to avail himself of Louisiana's post-conviction remedies as provided by La. C.Cr.P. art. 924 *et seq*. La. C.Cr.P. art. 930.8 provides a two year period of limitations for filing such applications, and the limitation period is generally reckoned from the date that the judgment became final upon the completion of direct

review as provided in art. 922.

### 5. *Limitations Under the AEDPA*

Of course, based on the evidence thus far tendered, it is impossible to determine when petitioner's judgment of conviction became "final" for AEDPA purposes. 28 U.S.C. §2244(d)(1) provides a one-year period of limitations for filing *habeas corpus* petitions challenging state court convictions. This one-year period is generally reckoned from the date that the state court judgment became final by the conclusion of direct review or the time for seeking further direct review. See §2244(d)(1)(a). At the earliest, petitioner's judgment of conviction became final for AEDPA purposes on or about March 30, 2007 when the thirty day period for seeking *certiorari* in the Louisiana Supreme Court lapsed. See *Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir.2003) (If petitioner stops the appeal process before taking the matter to the state court of last resort, "the conviction becomes final when the time for seeking further direct review in the state court expires."); see also *McGee v. Cain*, 104 Fed. Appx. 989, 991 (5th Cir.2004) ( per curiam ), *cert. denied,* 543 U.S. 1162, 125 S.Ct. 1324, 161 L.Ed.2d 134 (2005) ("[The] conviction became final for the AEDPA's limitations purposes on the date that the time expired for seeking a supervisory writ in the Louisiana Supreme Court ...") However, the evidence before the court is ambiguous with respect to the issue of finality of judgment since the Louisiana Supreme Court provided three extensions of the Rule X deadlines on plaintiff's behalf. [see rec. doc. 7, p. 4 – a 60 day extension from April 23, 2007 and, rec. doc. 7, p. 9 – a 60 day extension from September 18, 2007; and rec. doc. 7, p.12 – a 60 day extension from November 8, 2007.] Thus, it is possible that petitioner's judgment of conviction became final for AEDPA purposes in early January, 2008 when the 60 day extension granted on November 8, 2007 expired, and therefore, the

13

AEDPA limitations period would probably not expire until November 2008.

In that respect, petitioner is further advised that AEDPA's one-year period of limitation may be tolled during the time that a properly filed application for state post-conviction remains pending. See §2244(d)(2). However, petitioner is cautioned, the pendency of this federal *habeas* petition cannot be used to toll limitations under the statute. See *Duncan v. Walker*, 533 U.S. 167, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) (An application for federal *habeas corpus* review is not an "application for State post-conviction or other collateral review ," within meaning of tolling provision of the Antiterrorism and Effective Death Penalty Act (AEDPA); thus, the time for filing a federal *habeas* petition is not tolled during pendency of a *habeas* petitioner's first federal *habeas corpus* petition.) Thus, should petitioner decide to litigate his federal claims in the Louisiana courts, he should attempt to file his state post-conviction proceeding prior to the expiration date noted above.[12]

Finally, the instant petition does not present a "mixed" petition – i.e. a *habeas* petition that presents both exhausted and unexhausted claims. As shown above, none of petitioner's claims were properly exhausted in the Louisiana Supreme Court. Therefore, there is no apparent need to employ the "stay and abeyance" procedure approved by the Supreme Court in *Rhines v. Weber*, 544 U.S. 269, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005). Further, "... stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." *Rhines v. Webber*, 544 U.S. at 277, 125 S.Ct. At 1535. Based on the foregoing, the undersigned finds no good cause for petitioner's failure to

---

[12] Once again, the undersigned cautions petitioner – these calculations are based on the ambiguous and incomplete chronology thus far submitted by petitioner. The fact remains that petitioner's claims could be time barred at some date other than the dates mentioned herein.

exhaust his claims in the Louisiana Supreme Court.

## *6. Conclusion and Recommendation*

Therefore, considering the foregoing,

**IT IS RECOMMENDED THAT** the instant petition for writ of *habeas corpus* filed pursuant to the provisions of 28 U.S.C. §2254 be **DISMISSED WITHOUT PREJUDICE** because petitioner failed to exhaust available state court remedies prior to filing suit.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers at Monroe, Louisiana, this 26th day of September, 2008.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE